E. O'C. McINERY v. THE CITY OF GALVESTON.

(Case No. 971.)

1. FEES OF OFFICE.— The city clerk of Galveston received as such, for about two years, his salary established at the rate of $4,000 a year, and without objection collected fees and paid them into the city treasury. *Held,*

(1) The city council, in fixing the clerk's salary at $4,000, intended to limit his compensation to that amount.

(2) The clerk by receiving the salary estopped himself from asserting any claim to fees of office, under sec. 1, art. X, title III, of the city charter.

(3) The limitation in the charter upon the power of the city council in changing or altering the compensation of city officers, was intended to be confined to the municipal year rather than the term of office.

2. RULE FOR CONSTRUING STATUTES.— It is the duty of courts "to try out the right intendment of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. It is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the legislature to express its intent, and to follow which would be to pervert that intent."

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Appellant brought this suit against the city of Galveston May 21, 1877, to recover the sum of $6,832.82; of that amount, $6,679.01 was claimed as fees of the city clerk received and appropriated by the appellee from the 1st day of May, 1875, to the 31st day of March, 1877, during which time appellant claims to have been the clerk of said city, and as such entitled to said fees. Appellant claims the $153.81 as a balance of his salary due him for the month of March, 1877.

Appellee answered by general demurrer and general denial, and specially that appellant had during the time, from the 1st day of May, 1875, to the 1st day of March, 1877, received his salary as city clerk fixed by resolution of the council at $4,000 per annum, and in which it was declared that no fees were allowed, and requiring the clerk to collect the fees theretofore fixed, and to pay them into the general fund in the city treasury; that appellant did collect these fees and, without any objection on his part, pay the same into the city treasury, and that he was estopped from asserting any claim to the same. It also denied any liability on the part of the city to appellant on account of the reduction of his salary as such clerk for the month of March, 1877, and claimed that such reduction was authorized by the charter.

November 26, 1877, a trial was had before the court without a jury, and judgment rendered against appellant for costs, etc., from which this appeal was taken. The only error assigned was, "that the court erred in rendering judgment for defendant upon the facts proven, and failed to render judgment in accordance with the facts."

The record shows that on March 16, 1874, the council, by resolution, fixed the salary of the city clerk at $4,000 for that municipal year, which also required him to collect the fees allowed by the charter and ordinances, and to pay the same into the city treasury. This resolution was passed December 24, 1874; it was continued in force for the municipal year ending February 28, 1876, and again continued on December 20, 1875, for the municipal year ending the last day of February, 1877.

The appellant was appointed and qualified as clerk May 7, 1875, and again March 27, 1876, and held the office until the 25th day of March, 1877. During that time, except for the month of March, 1877, he received the salary of $4,000; for that month he received his salary (under protest) at the rate of $1,800 per year, as had been previously fixed by the council for the municipal year commencing March 1, 1877. During that time appellant had collected and paid

into the city treasury fees as follows: Accruing in recorder's court, $4,437.02; accruing from issuing license, etc., $2,288.21.

The charter of 1871 remained in force until August 2, 1876, when another was passed and approved.

Sec. 1, art. XXI, title X, of that charter provides: "The city council shall, on or before the first day of January in each and every year, fix the annual salary of the mayor to be elected at the next regular election, and shall, at the same time, establish the compensation or salary to be paid to the officers elected or appointed by the city council; and the compensation or salary so established shall not be changed during the term for which said officers shall be elected or appointed."

Sec. 1, art. XXXI, title X, provides: "That no officer of this city, elected or appointed, shall receive a larger compensation for his services than at the rate of five thousand dollars per annum, and that no officer shall receive fees, except police officers under the grade of chief of police."

Sec. 1, art. X, title III, after setting forth and in part defining the duties of the city clerk, says: "He shall also be clerk of the recorder's court, and shall have custody of all books and papers belonging to said court. He shall make out all process and writs, and enter upon a docket all complaints for violation or infraction of city ordinances before the recorder, and his judgment and sentence therein. He shall have power and authority to administer all oaths and affirmations, and as clerk of said court shall be entitled to such fees as are allowed the clerk of the district court for like services."

That section, after defining his duties as accountant and custodian of papers, etc., then provides, in conclusion, as follows: "He shall receive for his services an annual salary, payable at stated periods, and such additional fees as may be allowed by the city council."

Section 170 of the charter which took effect August 2, 1876, is as follows: "That no officer of this city, elected or appointed, shall receive a larger compensation for his services than at the rate of $5,000 per annum, and that no officer shall receive fees."

Section 171 provides that "no salary not fixed by this charter shall exceed $1,800 per annum for any office which the board of aldermen or council are authorized to create."

This charter provides that the city clerk and other officers shall be elected by the city council on the third Monday in March, or as soon thereafter as practicable, and shall hold his office until the third Monday in March thereafter.

The charter of 1871 provided that the city clerk should be appointed and confirmed at the first regular meeting of the city council after the general election in each year, and should hold his office for one year.

*P. T. Languille,* for appellant.

I. The fees which were paid to the city of Galveston, as clerk's fees, from the 1st day of May, A. D. 1875, to the 31st day of March, A. D. 1877, rightfully belong to appellant, and he may maintain an action therefor. The clerk's fees received by appellee through appellant and other persons, during the incumbency of the latter of the office of city clerk, amount as follows, viz.: From the 1st day of May, A. D. 1875, to the last day of March, 1876, $3,050.31; from April 1, A. D. 1876, to last day of March, A. D. 1877, $3,615.45.

II. The resolution of the city council of the city of Galveston of March 16, 1874, was and is void, because it conflicts with the charter of the city of Galveston then in force. See sec. 1, art. X, title III, Charter of the City of Galveston, approved May 16, 1871; Dillon on Municipal Corporations, sec. 251, p. 277.

III. The mere fact that appellant, from the 7th day of May, A. D. 1875, to the 25th day of March, A. D. 1877, received as clerk's fees, and paid over to appellee, the sum of $6,665.76, or a portion thereof, does not debar him from recovering the same of appellee, if the · same rightfully belonged to him. Plaintiff knew nothing of the resolution of the city council of March 16, 1874, until about three months after he had entered upon the discharge of his duties as such city clerk. Bigelow on Estoppel, ch. 19, p. 473 (1st ed.).

IV. The city council of the city of Galveston had not authority to reduce appellant's salary as city clerk for the month of March, A. D. 1877. The salary of appellant as city clerk was on the 20th day of December, A. D. 1875, fixed at $4,000 per annum for the municipal year ending March 1, 1877. Art. XXI, sec. 1 of title X of the Charter of the City of Galveston, approved May 16, 1871.

*Robert V. Davidson,* for appellee.

I. The charters of the city of Galveston of May 16, 1871, and August 2, 1876, which were in force during the whole time of appellant's terms of office as city clerk, expressly prohibited appellant's receiving fees as compensation for official services as such city clerk.

II. Under the charters of 1871 and 1876, it was the right and duty of the city council of appellee (city of Galveston), on or be-

fore the 1st day of January in each and every year, to establish the compensation or salary to be paid to the officers elected or appointed by said council, and such compensation could not be changed during the term for which said officers were elected or appointed.

(a) The compensation for the city clerk, during or for the terms of appellant, was fixed by the council on December 24, 1874, and December 20, 1875, at a salary or fixed sum of $4,000 per annum, and this salary or compensation so fixed could not be changed or increased during appellant's terms of office. Charter (special law) of 1871, title X, art. XXI, sec. 1.

III. Sec. 1, art. X, title III, of charter of 1871, provides that the city clerk "shall receive for his services an annual salary, payable at stated periods, and such additional fees as may be allowed by the council."

(a) The council, on December 24, 1874, provided that the city clerk for the municipal year 1875 (first term of appellant) should receive a stated salary, but should not receive fees.

(b) The same provision was made for the municipal year 1876 (appellant's second term); also during this latter term of appellant the charter of 1876 went into effect (August 2d), which inhibits any officer from receiving fees. Charter of 1871, title III, art. X, sec. 1; Charter of 1876, title XII, art. XXX, sec. 170.

IV. Appellant, without protest, and without any fraud or compulsion on the part of appellee, and with full knowledge of all the facts, having received and appropriated to his own use the salary or compensation fixed by the city council, thereby waived any claim to the fees sued for herein, and is thereby estopped from claiming said fees as compensation for his said official services as city clerk. Bigelow on Estoppel, pp. 500–525; Stagg v. Insurance Company, 10 Wall. (U. S.), 589.

V. The city council, on the 25th day of December, 1875, fixed appellant's salary to March 1, 1877, at $4,000 per year, and with knowledge of this, appellant continued in office and received such salary.

(b) The term of appellant was, by law, fixed and definite; the municipal year beginning March 1, 1876, and ending March 1, 1877, and his salary was not changed during his term of office.

VI. In this case a jury was waived, and the matters therein submitted to the judge, who found both the law and the facts in favor of appellee. The conclusions of such judge "are entitled to the same weight as the verdict of a jury," and will not be set aside un-

less they are without evidence to support them, and are manifestly erroneous. Stone *v.* Brown, 54 Tex., 330; Mathis *v.* Oberthier, 51 Tex., 550; Jordan *v.* Brophy, 41 Tex., 284; Bailey *v.* White, 13 Tex., 118.

WATTS, J. COM. APP.— Appellant claims the fees accruing in the recorder's court, upon the theory that this part of his compensation was established by the charter, and could not be controlled by the council. Without undertaking to construe the various provisions of the charter touching the matter, we are of the opinion that even though the correctness of the construction contended for by him should be conceded, that still under the facts of this case the appellant could not maintain an action against the city to recover these fees.

Manifestly the salary was established at $4,000 a year, upon condition that this should constitute his full compensation, or rather upon the basis that he was not to receive any fees in addition thereto. In this way the alternative was presented the appellant, to either accept this munificent salary without fees, or else assert his right to the fees at such time that the council could, without injury to either party, establish the compensation he was to receive in addition to the fees. For two years, however, without objection, he received the salary, and, as required by the resolution, collected the fees and paid them into the city treasury. Under such circumstances appellant will be held to have acquiesced in the action of the council, and to have waived any right to the fees.

A recovery of the fees as claimed by him would work a flagrant infraction of one of the provisions of the charter. No officer could receive a greater compensation than $5,000 per annum; appellant had received his salary of $4,000 per year, and now seeks to supplement that by a recovery of these fees to the extent of over $2,000 per annum.

Obviously the intention of the council was to limit the compensation of the clerk to the salary of $4,000, this to be in lieu of all fees, etc. Appellant has estopped himself from asserting any claim to fees. By his acts in receiving the salary and collecting the fees and paying the same into the city treasury, the council was induced to refrain from such action as was in its power, and by which it could have saved the city from loss. In establishing the salary for appellant's second term, it is but reasonable to suppose the action of the council was induced by his acquiescence in accepting the salary, apparently in good faith and without objection, and asserting no claim to the fees.

There is nothing in the charter that would have prohibited appellant from accepting the salary in lieu of all other compensation. And under the facts of this case, he will be held as having acquiesced in the action of the council in this respect; and that he is therefore precluded from recovering such fees.

Appellant's claim for additional salary for the month of March, 1877, is based upon the idea, that as his term of office was for one year from the date of appointment, that the term extended beyond the end of the municipal year, and for that balance of his term he was entitled to the salary as established by the council in December, 1875. This is claimed to result from that part of the charter which in effect provides that the compensation as established by the council shall not be changed during the term of office. As shown by the record, the municipal year commenced March 1, 1876, and ended the last day of February, 1877. The council in December, 1875, established the compensation of the corporate officers, including the clerk, for that time. During that municipal year another charter took effect, and in establishing the compensation of officers for the municipal year commencing March 1, 1877, the council acted under and was governed by the provision of the new charter.

It does not seem to us that the provision of the charter of 1871 now under consideration is subject to the literal construction contended for by the appellant. It could only be maintained by strictly adhering to the language, and ignoring the subject matter, context and purposes of the act.

In Russell v. Farquhar, 55 Tex., 359, Chief Justice Moore said: "While it is for the legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the legislature to express its intent, and to follow which would pervert that intent."

The language under consideration is that of a single clause in a long act, the purpose of which was to create and put into operation a city government for the most important city in the state. The intent of the legislature was to so arrange it, that, like an extensive and complicated machine, it would be perfect in all its parts. It would be doing violence to the most elementary rules of construction, to take an isolated provision of such an act, and, without regard to the context or the purposes of the act, give it an independent and literal construction according to the language used.

That provision had reference to the financial system provided for in the act, and which is a part of the machinery of the city government, and should be construed with a view to the harmonious working of the whole system in all its parts.

The financial and municipal year was the same. The budget, as it had reference to the compensation of officers, was required to be made up and established by the council prior to the commencement of the municipal year. It was intended that the compensation thus established should be confined to the municipal year. This system requires that accounts be kept, and reports to be made at the end of the fiscal year, including appropriations, receipts and expenditures.

The construction, as contended for by appellant, would materially affect the harmonious working of the system, and lead to confusion in the accounts and reports of these expenditures, by thrusting the policies of one administration into that of its successor.

In our opinion, the limitation upon the power of the council, in changing and altering the compensation as established, was intended to be confined to the municipal year rather than the term of office.

It should also be observed that the charter now in force took effect August 2, 1876, and the council acted under its provisions in establishing the compensation of the clerk for the municipal year commencing March 1, 1877.

That office was created by statute, and is therefore within the control of the legislature. It could alter at pleasure the term of office, the mode of appointment or the compensation. Cooley's Const. Lim., p. 336, and note 2.

A fair construction of the latter charter forbids the idea that it was intended that the compensation fixed under the former should extend beyond its own expiring municipal year.

We conclude, and so report, that the judgment of the court below ought to be affirmed.

AFFIRMED

[Opinion approved January 19, 1883.]